UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** : | **Criminal No. 06-355 (HHK)** |
| v. : | |
| **GUS GARDELLINI,** : | |
| aka Carlos Gustavo Gardellini : | |
| **Defendant.** : | |

### GOVERNMENT'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR A DOWNWARD DEPARTURE PURSUANT TO 5K2.0

Comes now the United States, by and through its undersigned attorney, and hereby submits this Memorandum in Opposition of Defendant's Motion for a Downward Departure pursuant to section 5K2.0. Defendant seeks a sentence outside of the advisory guidelines range based upon "extraordinary cooperation" based upon payment of the outstanding taxes owed to the IRS, agreement to extend the statute of limitations for prosecution of the false 1998 U.S. Individual Income Tax Return, meeting with the United States in the form of a proffer session and an alleged waiver of attorney-client privilege. None of defendant's purported conduct constitutes "extraordinary cooperation" to an exceptional degree or in some other way so as to make this case different from the ordinary case where similar factors are present. Defendant should be sentenced within the advisory Guideline range of 10 to 16 months imprisonment.

1. There is nothing "Extraordinary" about restitution where defendant simply pays the outstanding back taxes due and owing to the IRS

Ordinarily, payment of restitution is not an appropriate basis for downward departure under Section 5K2.0 because it is adequately taken into account by Guidelines Section 3E1.1. United States v. Hairston, 96 F.3d 102 (4th Cir. 1996)(citing cases); United States v. Broderson, 67 F.3d

452, 458-59 (2d Cir. 1995).

However, restitution can provide the basis for a downward departure, or a reduction within the advisory Guidelines, where it is present to such an exceptional degree that it cannot be characterized as typical or usual. See <u>United States v. Kim</u>, 364 F.3d 1235, 1240 (11th Cir. 2004) (defendant paid 140 percent of amount from which personally benefitted, obtained restitution funds from life savings and undertook enormous amounts of debt to repay restitution); <u>United States v. Oligmueller</u>, 198 F.3d 669 (8th Cir. 1999)(defendant voluntarily paid restitution almost one year prior to indictment) <u>see also</u> <u>United States v. Rhodes</u>, 145 F.3d 1375, 1382 (D.C. Cir. 1998).

There is no extraordinary restitution in this case. In paying the outstanding taxes prior to the sentencing event, defendant simply complied with the agreed terms of the plea agreement. Pursuant to the terms of the plea agreement, defendant agreed that:

> [P]rior to the date of sentencing, the (*sic*) Mr. Gardellini shall file accurate amended personal tax returns for the calendar years 1998 through 2002. Gardellini will pay past taxes due and owing to the Internal Revenue Service ("IRS") by him for the calendar years 1998 through 2002, including any applicable penalties on such terms and conditions as will be agreed upon between Gardellini and the IRS.

<u>See</u> December 6, 2006 Plea Letter, page 2, ¶ 3. In consideration, the government agreed that defendant would not be further prosecuted for crimes related to filing false income tax returns for 1998 through 2002. <u>See</u> Id. Had defendant failed to pay restitution prior to sentencing as agreed, defendant would have materially breached the terms of the plea agreement.

2.      There was no "Extraordinary Cooperation"

Defendant further seeks a downward departure from the Guidelines for his alleged extraordinary cooperation efforts pursuant to Guideline section 5K2.0. Defendant claims he is entitled to "cooperation" based upon (1) statements to the government pursuant to a proffer

2

session; (2) an agreement to extend the criminal statutes for the false 1998 Individual return;[1] and (3) a purported waiver of attorney client privilege.[2] None of this conduct, either separate or combined, merits consideration as extraordinary cooperation deserving a downward departure from the guidelines. At most, the totality of defendant's conduct could be considered in terms of a reduction within the advisory guideline range.

Indeed defendant made himself available in the United States to meet with the government. The parties engaged in a day-long proffer. None of his information provided any new leads or evidence in any other cases. Notably, the plea agreement executed in this case did not include a reference to section 5K1.1, thereby making it clear that cooperation was not contemplated by the parties. The plea was executed between the parties in December 2006, long after the proffer session occurred. Cooperation was not included in the plea agreement because it was determined by the government that defendant did not provide information that would be helpful to the government in various pending investigations.[3]

Virtually every federal court addressing the issue of cooperation, including the District of Columbia, has held that Section 5K1.1 was operative only upon motion of the government. See In Re Sealed Case, 181 F.3rd 128 (D.C.Cir. 1999) (in banc)( holding that a district court may not

---

[1] Even without defendant's agreement, the statute of limitations in this case were extended pursuant to a Government motion filed pursuant to 18 U.S.C. § 3293, where the Government awaited foreign evidence sought via MLAT.

[2] The witness to whom the defendant is referring is an accountant. There is no privilege that attached to her business and tax advise. Moreover, the government never asked nor sought the defendant to waive an type of privilege, assuming there were any, with this witness. Any advise that defendant provided his accountant was without any urging by the government.

[3] Obviously had defendant provided useful information during the proffer session, the government would have negotiated a 5K1.1 cooperation agreement after the proffer session in 2005.

invoke § 5K1.1 to sentence a criminal defendant below the guidelines range for the prescribed offense except upon motion of the government.) There is no § 5K1.1 motion pending in this case.

Defendant did execute statute extensions at the request of the Government to extend the criminal statute for the 1998 tax year. Although the defendant now states that his intent was wholly to facilitate the government's busy schedule, it is equally plausible that the exercise of a statute extension also inures benefits to a defendant. Surely the exercise of a statute extension postpones the imminent return of an indictment. In so doing, the defendant holds open the possibility that, by extending the potential indictment date into some far-off future date, the government may never indict the case for any number of reasons, including something as simple as lost witnesses or evidence.

Finally, defendant seeks credit for a purported waiver of attorney- client privilege between himself and his accountant such that it entitles him to "extraordinary cooperation." The government never sought defendant to waive an attorney- client privilege. The waiver to which defendant refers is in reference to an accountant hired by defendant. (See Defendant Sentencing Exhibit 6, November 4, 2005 letter.) The firm referenced in the Defendant Exhibit 6, Babione, Kuehler & Caslow, is an accounting firm, not a law firm. The witness did not have a law degree, was not a lawyer and was engaged by defendant long before any criminal investigation into defendants' conduct commenced. See Couch v. United States, 409 U.S. 322, 335 (1973)(no common law privilege for accountants) compare United States v. Kovel, 296 F.2d 918 (2d Cir. 1961). Any action defendant took with regards to his accountant was at his own initiative. Nevertheless, there is no protection or privilege that exists between a client and accountant in this context.

Certainly the government doesn't oppose giving defendant credit for his accommodations

and efforts, however, any credit should be in the form of consideration within the advisory guidelines range.

## CONCLUSION

WHEREFORE, the government submits that defendant's conduct does not constitute extraordinary restitution or extraordinary cooperation warranting a downward departure from the advisory Guidelines sentencing range. The government respectfully requests that the Court impose a sentence within the applicable advisory Guidelines sentencing range, and impose a period of supervised release of one year following defendant's incarceration.

Respectfully submitted,

BRUCE SALAD
ACTING DEPUTY ATTORNEY
GENERAL FOR TAX

/s/ KEK

KAREN E. KELLY
Trial Attorney
Virginia Bar No. 35403
U.S. Department of Justice
Tax Division
601 D Street, NW
Washington, DC 20530
(202) 616-3864
Karen.e.Kelly@usdoj.gov